UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| GARY SIMELTON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:15 CV 33 |
| PILOT FLYING J, | ) |  |
| Defendant. | ) |  |

## OPINION and ORDER

### I. BACKGROUND

This case stems from the employment relationship between plaintiff Gary Simelton, *pro se*, and defendant Pilot Flying J. Plaintiff began working for defendant in 2004. (DE # 70-1 at 20-21, Pl. Dep. 68-69.) Plaintiff eventually became General Manager for the Subway restaurant inside a travel center in Gary, Indiana. (*Id.* at 25, Pl. Dep. 73.)

In his amended complaint and the attached exhibits, plaintiff describes a series of incidents, beginning in 2007 and culminating in his 2014 resignation, that he believes amount to racial discrimination. (DE # 8.) The earliest allegations are that on December 4, 2007, Frank McClure, defendant's Director of Division 5, slapped plaintiff on the back of the head for an incorrect answer to a question. (*Id.* at 4.) Additionally, on September 9, 2008, Frank McClure made "racial sounds" mocking the nationality of another employee, Mr. Tegey. (*Id.*)

Two years later, on September 21, 2010, a cashier called a customer "the N word." General Manager Steve Alberts asked the cashier whey she did so, using the "N

word" himself in the conversation. Plaintiff alleges that Alberts also called African Americans porch monkeys during this conversation. (*Id.* at 5.)

Over a year later, a number of incidents occurred in early 2012, according to plaintiff. On January 16, 2012, Spencer McClure, General Manager at the time, stated over a headset: "How's my NWA people doing"; plaintiff interpreted the acronym "NWA" as standing for "Nigga With Attitude," and found the comment particularly insensitive as it occurred on Martin Luther King's birthday. (*Id.* at 4.) On January 25, 2012, Spencer McClure's wife asked plaintiff how his "little monkey" was doing, in reference to plaintiff's godchild. (*Id.*) On January 26, 2012, Spencer McClure started deleting plaintiff's emails and tasks, falsified plaintiff's responses in the system, and "fart[ed] near [plaintiff's] face." (*Id.* at 7.) On February 16, 2012, Spencer McClure told another employee that he was not "hiring any more ghetto people here." (*Id.* at 7.)

Another two years passed without incident, but on January 27, 2014, Frank McClure issued plaintiff a letter outlining compensation changes for plaintiff's position, specifically with regard to bonuses and the "Partners in Profit" plan. (*Id.* at 8.) Plaintiff further claims that on March 6, 2014, plaintiff was told by Jeff Van Horne, Director of Food Services, he was not the right person to run Subway because of his sales, and needed to start looking for a new job. (*Id.* at 7.) On March 9, 2014, plaintiff resigned citing unbearable conditions (DE # 70-1 at 48), before the compensation structure change took effect. (DE # 70-1 at 36, Pl. Dep. 85:9-10.)

2

The Equal Employment Opportunity Commission ("EEOC") received plaintiff's Charge of Discrimination on July 9, 2014. (DE # 70-1 at 48.) Plaintiff was issued a right-to-sue letter by the EEOC (DE # 1 at 4), and he filed a complaint on January 28, 2015 (DE # 1) and an amended complaint on June 8, 2015. (DE # 8.) Plaintiff's amended complaint alleged that defendant had violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206, *et seq*. Plaintiff also alleged that defendant committed the torts of battery and intentional infliction of emotional distress ("IIED"). Defendant was granted judgment on the pleadings on plaintiff's Equal Pay Act and battery claims by Chief Judge Theresa L. Springmann on April 14, 2016. (DE # 33.) This case was reassigned to the undersigned on May 1, 2017. (DE # 55.)

Defendant moved for summary judgment on August 16, 2017, simultaneously filing and serving a "Notice of Summary Judgment" to plaintiff, a *pro se* party, in accordance with this district's local rules. (DE ## 68, 71.) Defendant seeks summary judgment on plaintiff's Title VII and IIED claims. Plaintiff did not file a response. The motion is now ripe for ruling.

## II. LEGAL STANDARD

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

3

the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

Because plaintiff failed to file a response to defendant's motion for summary judgment, defendant is entitled to summary ruling on the motion – that is, a ruling without the benefit of plaintiff's response. However, plaintiff's failure to respond does not automatically result in summary judgment for defendant. *Wienco, Inc. v. Katahn Assoc., Inc.,* 965 F.2d 565, 568 (7th Cir. 1992). Rather, the court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.* Accordingly, the court's task is to examine the factual record to determine whether defendant has met its burden of demonstrating a lack of genuine issues of material fact warranting summary judgment in its favor.

### III. DISCUSSION

Though plaintiff did not file a response to defendant's motion for summary judgment, the court has generously interpreted the record and prior submissions by plaintiff in deciding defendant's motion. The court considers these filings even though

4

they have not been authenticated or otherwise properly submitted as evidence, giving plaintiff full benefit of the doubt. Further, the court has liberally construed the amended complaint and has discerned two Title VII discrimination claims (hostile work environment and disparate treatment) and an intentional infliction of emotional distress claim as plausible theories of recovery, even though plaintiff has not necessarily articulated or developed them as such. The court considers defendant's motion regarding these claims, below.

    A.    **Timeliness of Discrimination Allegations**

Plaintiff's allegations related to his discrimination claims span a time period from December of 2007 to March of 2014. Plaintiff had 300 days from the date each action allegedly occurred to file a charge with the EEOC. *Pruitt v. City of Chicago,* 472 F.3d 925, 927 (7th Cir. 2006). Plaintiff filed his charge with the EEOC in July of 2014. Defendant does not challenge the timeliness of the allegations regarding the letter from Frank McClure in January 2014 describing compensation changes, the conversation with Jeff Van Horne in March 2014, or plaintiff's eventual resignation. However, defendant claims that the remainder of the allegations are time-barred and may not be considered in this lawsuit.

The court agrees that the remainder of the allegations (occurring in a time period between December 2007 and February 2012) are beyond the 300-day filing window. However, for purposes of plaintiff's hostile work environment claim, the court must consider whether the continuing violation doctrine can assist plaintiff in seeking redress

for these otherwise time-barred incidents. A hostile work environment claim is timely as long as any act falls within the statutory time period, even if the claim encompasses events occurring prior to the statutory time period. *Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015). Although the continuing violation doctrine allows plaintiffs "to drag up ancient history, to the employer's prejudice, the length of time between incidents has been a consistent limiting factor." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017) (internal quotation marks and citations omitted).

In this case, the earliest allegation falling within the limitations period occurred in January of 2014, *two years* after the most timely allegations falling outside of the limitations period, which occurred in January and February of 2012. The Seventh Circuit has held that a two-year gap in time between allegedly discriminatory events negates the contention that the acts were continuous or connected for purposes of the continuing violation doctrine. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 709 (7th Cir. 2002) (rejecting application of continuing violation doctrine in light of two-year gap); *Selan v. Kiley*, 969 F.2d 560, 567 (7th Cir. 1992) (same). In short, given the significant span of time between the events falling within the limitations period and the earlier allegations, no reasonable fact-finder would conclude that plaintiff's allegations describe a "single chain, a single course of conduct" sufficient to defeat the statute of limitations. *Tinner*, 308 F.3d at 708. Accordingly, the court considers all allegations time-barred, save the events that allegedly occurred in early 2014.

B.   **Hostile Work Environment**

To the extent that plaintiff asserts a hostile work environment claim, the claim fails. As explained above, the only alleged actions this court will consider are those that occurred in January through March of 2014. In order to establish a harassment or hostile work environment claim, "[t]he conduct at issue must have a racial character or purpose." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). There is simply no racial character or purpose discernable from the letter changing plaintiff's compensation plan, which plaintiff received in January of 2014, or the conversation with Jeff Van Horne which occurred in March of 2014 and after which plaintiff resigned. Accordingly, defendant is entitled to summary judgment on plaintiff's hostile work environment claim.

C.   **Disparate Treatment**

Plaintiff's complaint can be read to include a disparate treatment claim under Title VII. Disparate treatment "is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15 (1977). "Proof of discriminatory motive is critical" to such a claim, *id.*, though it can be proven in different ways. However, the existence of an "adverse employment action" is necessary, no matter what. *Rhodes v. Illinois Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004).

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an

7

alteration of job responsibilities.'" *Stockett v. Muncie Ind. Transit Sys.,* 221 F.3d 997, 1001 (7th Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir. 1993)) (alteration in *Stockett*). "Adverse employment actions encompass more than simply the termination of employment or a decrease in salary. They also may include actions such as bestowing on an employee 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Id.* (quoting *Crady,* 993 F.2d at 136).

From the record, the court perceives three timely allegations of disparate treatment: (a) a letter, received by plaintiff in January of 2014, from Frank McClure outlining changes to plaintiff's compensation structure; (b) a conversation with Jeff Van Horne, in which plaintiff claims that he was told to look for a new job; and (c) plaintiff's eventual resignation. The court addresses each of these purported adverse employment actions in turn.

As for the first allegation, the letter plaintiff received from Frank McClure in January of 2014 regarding changes to plaintiff's compensation structure, plaintiff admitted at his deposition that he resigned before the compensation structure change took effect. (DE # 70-1 at 36, Pl. Dep. 85:9-10.) Accordingly, no adverse employment action exists with respect to the letter from Frank McClure. *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1121 (7th Cir. 2009) (finding no adverse employment action occurred and stating that "Nagle did not suffer any hardship connected with the suspension because he never actually served it").

8

The second allegation is that Jeff Van Horne told plaintiff to find a new job in a conversation occurring in March of 2014. While this alleged comment may have been upsetting to plaintiff, it does not constitute an adverse employment action because there is no question that plaintiff was not terminated during that conversation, nor were any other terms and/or conditions of employment altered. Even a threat of firing does not constitute an adverse employment action if the terms and conditions of employment are not altered. *Ajayi v. Aramark Bus. Servs.,* 336 F.3d 520, 531 (7th Cir. 2003) ("An unfulfilled threat, which results in no material harm, is not materially adverse.").

The final allegation is plaintiff's contention that he was forced to resign because his working conditions were so intolerable. Legally, this type of adverse employment action is called a "constructive discharge." Constructive discharge occurs when an employee's job becomes so unbearable that a reasonable person in that employee's position would be forced to quit. *Roby v. CWI, Inc.,* 579 F.3d 779, 785 (7th Cir. 2009). The standard for establishing constructive discharge is extremely high; the situation must be "even more egregious than that needed for a hostile work environment" claim. *Overly v. KeyBank Nat'l Ass'n,* 662 F.3d 856, 864 (7th Cir. 2011). Further, the working conditions that caused the constructive discharge must be intolerable in a discriminatory way. No matter how "horrific the conditions," plaintiff must put forth evidence showing that the conditions were inflicted upon him because of his protected trait. *Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 517 (7th Cir. 1996). Additionally, "[a] constructive discharge claim requires evidence that quitting was the only way the plaintiff could extricate [him]self

from the intolerable conditions." *Gawley v. Ind. Univ.,* 276 F.3d 301, 315 (7th Cir. 2001). This requirement "eliminates from consideration" any harassing actions alleged by a plaintiff about which he did not notify his employer. *Id.*

The Seventh Circuit has generally reserved the label of "constructive discharge" for situations involving egregious emotional torment and threats of physical harm. *See, e.g., Taylor v. W. & S. Life Ins. Co.,* 966 F.2d 1188, 1191 (7th Cir. 1992) (finding constructive discharge where the employee's boss consistently made racial comments and on one occasion held a gun to his head, took a photo, and later showed it at a staff meeting while joking that "this is what a n[*****] looks like with a gun to his head"); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417, 423 (7th Cir. 1989), *rev'd in part on other grounds, Saxton v. Am. Tel & Tel. Co.,* 10 F.3d 526 (7th Cir. 1993) (plaintiff established constructive discharge where "repeated instances of grossly offensive conduct and commentary" culminated with an incident during which a co-worker showed the plaintiff a racist pornographic photograph, told her that she was hired to perform the task depicted in the photograph, grabbed the plaintiff, and threatened to kill her).

While *Taylor* and *Brooms* may seem like obvious examples of constructive discharge, the Seventh Circuit has held that other seemingly disturbing conduct did *not* rise to the very high level required to establish constructive discharge. *See, e.g., Simpson v. Borg-Warner Auto., Inc.,* 196 F.3d 873, 877-78 (7th Cir. 1999) (co-worker's comment that "someone should take a dish and knock [the plaintiff] upside the head" did not establish constructive discharge); *Dunn v. Washington County Hosp.,* 429 F.3d 689, 693

(7th Cir. 2005) (no constructive discharge where doctor pushed nurse against cabinet and, while he had her pinned, tapper her on the cheek with a closed fist to urge nurse to withdraw sexual harassment complaint).

In this case, plaintiff claims that he was forced to resign because harassment had become unbearable. (DE # 70-1 at 65, letter from plaintiff.) Even if the court considers all of the incidents alleged by plaintiff, including those that are time-barred and those which plaintiff did not report to management, the conditions described by plaintiff were not so intolerable as to constitute constructive discharge. Plaintiff experienced the slap to the head by Frank McClure in 2007, and then heard him make mocking sounds towards another employee nine months later in 2008. The next year, in 2009, plaintiff alleges he was demoted. The following year, in September of 2010, plaintiff heard Steve Alberts, use "the N Word" and "porch monkeys." In 2011, plaintiff claims he did not receive certain money that he expected from the company. The following year, in January and February of 2012, there were several encounters: Spencer McClure used the term "NWA," Spencer's wife referred to plaintiff's godchild as a "little monkey," Spencer started interfering with plaintiff's work and "fart[ed] near [plaintiff's] face," and Spencer mentioned he was not hiring any more "ghetto people." (DE # 8 at 7.) Two years went by without incident, and in January 2014, plaintiff received the letter from Frank regarding compensation changes. In March 2014, plaintiff was told to find a new job, and after that, he resigned.

11

In total, plaintiff experienced approximately one seemingly-negative incident per year, except for the cluster of events involving Spencer in 2012, and the final series of events in 2014. Plaintiff essentially describes many years of occasional, infrequent negative encounters, not all of which are overtly or obviously racially-tinged, and not all of which were directed at plaintiff. No egregious emotional torment or threats of physical harm occurred. One incident of physical contact occurred, with no facts indicating that the act had any association with plaintiff's race. All in all, no reasonable fact-finder considering these facts would conclude "quitting was the only way the plaintiff could extricate [him]self from the intolerable conditions." *Gawley*, 276 F.3d at 315. Unless conditions are beyond "ordinary" discrimination, a complaining employee is expected to remain on the job while seeking redress. *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997). Plaintiff did not do so; he chose to resign. However, that resignation does not constitute an adverse employment action for purposes of his disparate treatment claim.

Because no actionable adverse employment actions are discernable from plaintiff's allegations and the evidence in the record, plaintiff's disparate treatment claim fails.

### D. Intentional Infliction of Emotional Distress

Plaintiff also sues for IIED under Indiana law. Defendant points out that any allegations other than those occurring in 2014 are time-barred under Indiana's two-year statute of limitations, and the court agrees. *Tsitsopoulou v. Univ. of Notre Dame,* 2:10 CV

12

309, 2011 WL 839669, at *4 (N.D. Ind. Mar 7, 2011) (citing Ind. Code § 34-11-2-4). The court also agrees with defendant's argument that the 2014 allegations (the letter from Frank McClure, the conversation with Jeff Van Horne, and plaintiff's resignation) do not constitute outrageous conduct sufficient to sustain an IIED claim. Additionally, Indiana courts have not permitted IIED claims based on employment relationships gone sour. *Mehling v. Dubois County Farm Bur. Coop. Ass'n,* 601 N.E.2d 5, 9 (Ind. Ct. App. 1992) (Indiana recognizes no cause of action for IIED in wrongful discharge case brought by "at-will" employee); *McCreary v. Libbey –Owens–Ford Co.,* 132 F.3d 1159, 1167 (7th Cir. 1997). For all of these reasons, defendant is entitled to summary judgment on plaintiff's IIED claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on plaintiff's Title VII and intentional infliction of emotional distress claims (DE # 68) is **GRANTED.** Plaintiff's battery and Equal Pay Act claims were previously dismissed as a matter of law. (DE # 33.) Because no claims remain in this case, the court directs the Clerk to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendant Pilot Flying J, and against plaintiff Gary Simelton, who shall take nothing by way of his complaint.

**SO ORDERED.**

Date: March 29, 2018

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

13